UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RALPH A. MARSHALL,

        Plaintiff,

v.

UNKNOWN BRICKMAN et al.,

        Defendants.
_____/

Case No. 2:24-cv-86

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Cout will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]however, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lyons and Faulds. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against Defendants Brickman and Riley premised upon the act of writing allegedly false misconduct reports. Plaintiff's Eighth Amendment claims, and First Amendment claims for retaliation against Defendants Brickman and Riley premised upon their use of force against Plaintiff remain in the case.

## **Discussion**

### **I.  Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues the following LFM staff in their individual capacities: Sergeant Unknown Brickman[2], Corrections Officer Unknown Riley, Corrections Officer Unknown Lyons, and Corrections Officer Unknown Faulds.

Plaintiff alleges that, on July 26, 2021, he was involved in a physical altercation with another prisoner and was handcuffed and placed on the ground. (ECF No. 1, PageID.7.) Defendants Brickman and Riley raised Plaintiff to his feet and began escorting Plaintiff to temporary segregation, at which time Plaintiff requested medical attention. (*Id.*)

Defendant Brickman told Plaintiff, "shut the f*** up and keep walking[,] that's a direct order given." (*Id.*) After a verbal exchange, Defendant Brickman also told Plaintiff that, if he continued to talk, Plaintiff would "have a reason to go to f***** healthcare." (*Id.*) Plaintiff told Defendants that he would be pressing charges if Defendants "put [their] hands on [Plaintiff]." (*Id.*) Defendants proceeded to step on Plaintiff's heels and, when Plaintiff stopped to look behind him, Defendants yelled at Plaintiff to "stop resisting," grabbed Plaintiff by the legs, and slammed Plaintiff to the ground on Plaintiff's head, neck, and face. (*Id.*, PageID.7–8.) Defendants then placed Plaintiff in a restraining chair. (*Id.*, PageID.8.)

Plaintiff told Defendants that he would be filing grievances against them for using excessive force against him after he requested medical attention. (*Id.*) Defendant Brickman responded, "dude shut the f*** up [be]for I have them (his staff) flip this restraint chair and quit crying like a b**** your hip is fine." (*Id.*) Plaintiff continued to tell Defendants he would be "pressing charges," when Defendant Riley told Plaintiff that he was "in for a rude awakening,"

---

[2] Plaintiff refers to this Defendant as both "Brickman" and "Brinkman." Based upon the facts alleged, the Court presumes that the names are interchangeable. Because Plaintiff's complaint first lists this Defendant as Sergeant Brickman, the Court will use Brickman throughout this opinion.

4

and Defendant Brickman told Plaintiff he would be transferred and his legal papers would be missing, among other things. (*Id.*)

That same day. Defendant Riley issued Plaintiff a Class I misconduct report for assault and battery related to Plaintiff's efforts to physically interfere with Defendants Brickman and Riley as they were escorting him to temporary segregation. (ECF No. 1-2, PageID.27.) Defendant Brickman also issued Plaintiff a Class II misconduct report for assault and battery for Plaintiff's attempt to spit on Defendant Brickman and efforts to resist while being escorted to temporary segregation. (*Id.*, PageID.28.) Defendant Faulds issued Plaintiff a misconduct report for disobeying a direct order. (ECF No. 1, PageID.6; ECF No. 1-1, PageID.24.) Plaintiff claims that these misconduct reports are false. (ECF No. 1, PageID.12.)

Because all three misconduct reports "arose out of the same incident" on July 26, 2021, the misconduct charges were combined for a Class I misconduct hearing before Administrative Law Judge (ALJ) Theut. (ECF No. 1-1, PageID.24.) ALJ Theut explained that the charges included assault and battery, the "[i]ntentional, non-consensual touching of another person done either in anger or with the purpose of abusing or injuring another . . . a physical interference and a physical resistance . . .," and disobeying a direct order, "[a] failure to follow a direct and [reasonable] order by a staff member . . ." (*Id.*) He reviewed the video showing the incidents in question, as well as Plaintiff's written statements, a memo regarding the video, three screening forms, two still pictures, and a sanction assessment page. (*Id.*) Ultimately, ALJ Theut concluded that Plaintiff was guilty on all charges. (*Id.*) He found that Plaintiff "heard and understood the order," "voluntarily failed to follow the order and did not stop pulling away." (*Id.*) He also found that Plaintiff "tried to spit on Sgt. Brinkman." (*Id.*)

5

On July 30, 2021, Plaintiff filed a grievance against Defendants Brickman and Riley for excessive force. (ECF No. 1, PageID.9.) After not receiving a response, Plaintiff sent several kites and additional grievances regarding his initial grievance. (*Id.*, PageID.9–10.)

Plaintiff was transferred to AMF in May 2022. (*Id.*, PageID.10.) At that time, he noticed that his legal papers and items of his personal property were missing. (*Id.*, PageID.11.)

Plaintiff states that he intends to bring claims for violation of his First and Eighth Amendment rights, as well as supplemental state law claims. (ECF No. 1, PageID.6.) He seeks monetary and injunctive relief. (*Id.*, PageID.13–14.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

  **A.**   **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff specifies that he intends to bring Eighth Amendment claims for excessive force against Defendants Brickman and Riley and First Amendment retaliation claims against all Defendants. (ECF No 1, PageID.6.)

  **1.**   **Eighth Amendment Claims**

Plaintiff alleges that Defendants Brickman and Riley used excessive force against Plaintiff when they picked Plaintiff up by the legs and "slammed" Plaintiff into the ground. (*Id.*)

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id*. However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v.*

7

*McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated...[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Taking Plaintiff's allegations as true, as is required at this stage, Plaintiff sufficiently states a claim for Eighth Amendment excessive force against Defendants Brickman and Riley.

### 2. First Amendment Retaliation

Plaintiff alleges that Defendants retaliated against Plaintiff for threatening to file grievances against "staff." (ECF No. 1, PageID.6.) The Court also construes Plaintiff's complaint as alleging that Defendants retaliated against Plaintiff in response to his requests for medical attention. (*Id.*, PageID.7–8.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 Fed.Appx. 579, 579-80

(6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

### a. Protected Conduct

An inmate has a right to submit "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Here, Plaintiff alleges that he requested medical care from Defendants Brickman and Riley, complained that Defendants Brickman and Riley were denying him, and orally stated his intent to file a grievance concerning Defendants Brickman and Riley for their refusal to provide medical care and for their use of force. Thus, at this stage of the proceedings, Plaintiff has sufficiently alleged that he engaged in protected conduct for purposes of his First Amendment claim.

### b. Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

10

Here, Plaintiff alleges that Defendants Brickman and Riley each engaged in adverse action against Plaintiff by using excessive force against him and in issuing him false misconduct tickets. (ECF No. 1, PageID.6.) Plaintiff also alleges that Defendant Faulds filed a false misconduct against Plaintiff. (*Id.*, PageID.6–7.) The use of force by Defendants Brickman and Riley was undoubtedly an adverse action. The issuance of a misconduct ticket, and the resulting conviction and sanctions, can also be considered adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Therefore, Plaintiff has sufficiently alleged the second element of a retaliation claim against Defendants Brickman, Riley, and Faulds.

However, Plaintiff has not alleged any facts to support his claim that Defendant Lyons engaged in an adverse action against Plaintiff sufficient to state a First Amendment claim. Plaintiff merely alleges, in a conclusory fashion, that Defendant Lyons is "accused of taking adverse actions towards that Plaintiff." (ECF No. 1, PageID.6.) Plaintiff makes no further factual allegations against Defendant Lyons specifically. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Plaintiff also alleges that Defendant Lyons and Defendant Faulds are collectively identified as "the Officers." (ECF No. 1, PageID.6.) However, this reference to "the Officers" does not remedy the shortcoming of Plaintiff's complaint. First, Plaintiff's complaint does not contain specific references to "the Officers." Plaintiff discusses being initially handcuffed by "Correctional

11

Officers" (ECF No. 1, PageID.7), that Defendants Riley and Brickman looked for "other Sgt.s or Lt. officers" (*id.*), that "more corrections officers gained upon Defendant" and stepped on the backs of Plaintiff's shoes (*id.*), and that "other correctional officers piled up on the plaintiff aggressively. . ." (*id.*, PageID.8). Even a liberal reading of Plaintiff's complaint does not allow the Court to infer that Plaintiff intended to refer to Defendant Lyons, individually, in any of these allegations. And, second, "[s]ummary reference to a single, five-headed 'Defendants' [or officers] does not support a reasonable inference that each Defendant is liable . . . " *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Thus, Plaintiff's First Amendment claim against Defendant Lyons falls far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and is subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

   **c.**  **Causation**

  In addition to the first two elements, Plaintiff must allege sufficient facts to demonstrate that the actions of the named Defendants were motivated, at least in part, by the protected conduct.

  As against Defendant Faulds, Plaintiff has alleged no *facts* from which the Court could infer that Defendant Faulds was aware of Plaintiff's oral statements to Defendants Brickman and Riley, let alone that Defendant Faulds and issued Plaintiff the misconduct ticket because of those statements. Any vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews");

12

*cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff's claims against Defendants Brickman and Riley must be separated into two parts. First, accepting the factual allegations within Plaintiff's complaint as true, Plaintiff sufficiently alleges that that Defendants Brickman and Riley retaliated against Plaintiff by slamming Plaintiff into the ground in response to Plaintiff's request for medical attention. He will be permitted to proceed on this limited First Amendment claim.

However, the same cannot be said of Plaintiff's claim that Defendants Brickman and Riley issued retaliatory false misconduct reports against Plaintiff because the Court cannot accept as true Plaintiff's allegations that the misconduct reports issued against him were false.

The Sixth Circuit has held that a prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). However, as the Sixth Circuit

13

subsequently qualified in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), not every factual finding is entitled to preclusive effect. Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. [*Peterson*, 714 F.3d] at 916–17. It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404–05.

In *Maben v. Thelen*, the Sixth Circuit further clarified the limitations of the preclusion doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

> In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan major misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id.* at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id.* at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id.* at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id.*

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so— not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

14

> *Id.* at 404–05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question, and remanded the case to the district court to consider the argument for the first time. *Id.* at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id.* The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id.* at 405.

*Maben*, 887 F. 3d at 259.

Here, in the context of a hearing with a judicial officer, where Plaintiff was able to fully litigate the issues involved, ALJ Theut concluded that Plaintiff was guilty on all three charges, including two charges of assault and battery and one charge of disobeying a direct order. (ECF No. 1-1, PageID.24.) ALJ Theut reviewed the video showing the incidents in question, as well as Plaintiff's written statements, a memo regarding the video, three screening forms, two still pictures, and a sanction assessment page. (*Id.*) In so doing, he found that Plaintiff "heard and understood the order," "voluntarily failed to follow the order and did not stop pulling away," and "tried to spit on Sgt. Brinkman." (*Id.*) Thus, Plaintiff is precluded from claiming that the misconduct charges against him were false.

It must be noted that, in this case, Plaintiff was charged with both major and minor misconducts. The procedural protections available in the case of a major misconduct are not generally available when a prisoner is charged with a minor misconduct. *Maben*, 887 F. 3d at 260. Typically, the prisoner is not afforded a formal hearing before a judicial officer and is not guaranteed the opportunity to present written arguments or evidence. *Id.* In that context, because there are "insufficient judicial-type protections available," courts have found that the MDOC is not acting in a "judicial capacity," and therefore the factual findings do not have preclusive effect. *Id.* at 261. However, in this case, all three misconduct reports—including Plaintiff's Class II

15

misconduct—were combined for hearing before ALJ Theut. (ECF No. 1-1, PageID.24.) Therefore, for all three charges, Plaintiff was given the opportunity to present written statements and evidence and received a final written decision, as memorialized in the Class I Misconduct Hearing Report attached to Plaintiff's complaint. (*Id.*)

Moreover, as discussed above, it is not the conclusion of guilt, but the "specific factual findings" that are given preclusive effect. *Roberson*, 770 F.3d at 404–05. Here, the specific factual findings of ALJ Theut—that Plaintiff "heard and understood the order," "voluntarily failed to follow the order and did not stop pulling away," and "tried to spit on Sgt. Brinkman"—were made with the "judicial-type protections" necessary for preclusion under Michigan law. Precluding Plaintiff from relitigating the same disputed facts now comports with the Court's "sense of justice and equity." Consequently, the elements of the *Peterson/Roberson/Maben* test are met with respect to all misconduct charges. The decision by ALJ Theut precludes Plaintiff's claim that Defendants Brickman, Riley, and Faulds issued the misconduct charges in retaliation for Plaintiff's protected conduct.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a First Amendment retaliation claim premised upon the act of writing allegedly false misconduct reports.

B.  **State Law Claims**

Plaintiff also indicates that he intends to bring supplemental claims against Defendants for violation of state law. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). With respect to Defendants Lyons and Faulds, because Plaintiff's

federal claims against these Defendants will be dismissed, the Court will dismiss Plaintiff's state law claims against these Defendants without prejudice.

As to Defendants Brickman and Riley, because Plaintiff continues to have a pending federal claim against them, the Court will exercise supplemental jurisdiction over his state law claim against Defendants Brickman and Riley.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Lyons and Faulds will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the Plaintiff's First Amendment retaliation claims against Defendant Brickman and Riley premised upon the act of writing allegedly false misconduct reports. Plaintiff's Eighth Amendment claims, and First Amendment claims for retaliation against Defendants Brickman and Riley premised upon their use of force against Plaintiff remain in the case.

An order consistent with this opinion will be entered.

Dated:   July 12, 2024                    /s/ *Maarten Vermaat*
                                          Maarten Vermaat
                                          United States Magistrate Judge